IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| TEMPER EVANS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:10-CV-337 |
| | ) |
| O'REILLY AUTOMOTIVE, INC., and | ) |
| DAVID STEELE, | ) |
| | ) |
| Defendants. | ) |

**<u>MEMORANDUM OPINION</u>**

This civil action is before the court on "Defendant O'Reilly Automotive, Inc.'s, Partial Motion to Dismiss Claims Set Forth in Plaintiff's Amended Complaint [doc. 49]. Plaintiff has filed a response to the motion [doc. 51]. Oral argument is unnecessary, and the motion is ripe for the court's determination. For the reasons that follow, the motion will be granted.

I.

*Background*

The following facts are taken from the complaint and are relevant to the motion that is before the court. Defendant O'Reilly Automotive, Inc., is an auto parts business. Defendant David Steele was an assistant store manager of O'Reilly's Rockwood, Tennessee store where plaintiff was an employee. In November 2009, Steele and plaintiff were working a shift together. During the shift, Steele removed plaintiff's cell phone from her shirt breast

pocket without her consent and over her objection. The cell phone was plaintiff's personal property, not a phone issued by O'Reilly. The cell phone contained pictures of plaintiff in a swimsuit which Steele wanted to view for his personal pleasure. Steele kept the cell phone without plaintiff's consent and also showed the pictures of plaintiff in the swimsuit to a store customer who was also his friend. Steele forwarded or electronically transferred the pictures from plaintiff's phone to himself.

II.

*Standard of Review*

Defendant's motion is brought pursuant to Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." In resolving a motion under Rule 12(b)(6), the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). "The factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' . . . A claim has facial plausibility when

2

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Bowman v. United States*, 304 F. App'x 371, 374 (6th Cir. 2008) (citing *Ass'n of Cleveland Fire Fighters*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555)).

III.

*Analysis*

O'Reilly has moved to dismiss the claims that plaintiff has brought against it based on the doctrine of *respondeat superior*. A review of the amended complaint indicates that the following claims specifically seek to hold O'Reilly liable based on the doctrine of *respondeat superior*: the Federal Stored Communications Act, 18 U.S.C. § 2701 *et seq*.; the Tennessee Personal and Commercial Computer Act of 2003, Tenn. Code Ann. § 39-14-601 *et seq*.; the Tennessee Personal Rights Protection Act of 1984, Tenn. Code Ann. § 47-25-1101 *et seq*.; and the common law torts of conversion, invasion of privacy, and intentional infliction of emotional distress.[1]

---

[1] As a result, the following claims from the amended complaint are excluded from consideration in this motion: Tennessee Whistleblower Protection Statute, Tenn. Code Ann. § 50-1-304; Tennessee common law retaliatory discharge; Title VII of the Civil Rights Act of 1964, 42

(continued...)

3

Under the doctrine of *respondeat superior*, "an employer may be held liable for the torts committed by his or her employees while performing duties within the scope of employment." *Hughes v. Metro. Gov't of Nashville & Davidson County*, 340 S.W.3d 352, 363 (Tenn. 2011) (quoting *White v. Revco Disc. Drug Ctrs., Inc.*, 33 S.W.3d 713, 718 (Tenn. 2000)). In order to hold an employer liable based upon the doctrine of *respondeat superior*, "the plaintiff must prove (1) that the person who caused the injury was an employee, (2) that the employee was on the employer's business, and (3) that the employee was acting within the scope of his employment when the injury occurred." *Tenn. Farmers Mut. Ins. Co. v. Am. Mut. Liab. Ins. Co.*, 840 S.W.2d 933, 937 (Tenn. Ct. App. 1992). The Tennessee Supreme Court in *Hughes* noted that Tennessee courts have looked to the Restatement of Agency to determine "whether an act was within the scope of employment in a particular case." *Id*. (citing *Kelly v. La. Oil Refining Co.*, 66 S.W.2d 997 (Tenn. 1934); *Tenn. Farmers Mut. Ins. Co. v. Am. Mut. Liab. Ins. Co.*, 840 S.W.2d 933, 937 (Tenn. Ct. App. 1992) ("The courts have frequently turned to the Restatement (Second) of Agency for the theoretical framework for deciding whether an employee's conduct is within the scope of his or her employment.")).

The Restatement (Second) sets out the following test for determining whether an act by an employee was performed within the scope of employment:

---

[1](...continued)
U.S.C. § 2000e; and retaliation under Title VII.

> (1) Conduct of the servant is within the scope of employment if, but only if:
>
> (a) it is of the kind he is employed to perform;
> (b) it occurs substantially within the authorized time and space limits;
> (c) it is actuated, at least in part, by a purpose to serve the master; and
> (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.
>
> (2) Conduct of the servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time and space limits, or too little actuated by a purpose to serve the master.

*Hughes*, 340 S.W.3d at 363-64 (citing Restatement (Second) of Agency § 228). Tennessee courts also have looked to § 229 of the Restatement (Second) of Agency which provides factors to consider:

> (2) In determining whether or not the conduct although not authorized, is nevertheless so similar to or incidental to the conduct authorized as to be within the scope of employment, the following matters of fact are to be considered:
>
> (a) whether or not the act is one commonly done by such servants;
> (b) the time, place and purpose of the act;
> (c) the previous relations between the master and the servant;
> (d) the extent to which the business of the master is apportioned between different servants;
> (e) whether or not the act is outside the enterprise of the master or, if within the enterprise, has not been entrusted to any servant;
> (f) whether or not the master has reason to expect that such an act will be done;
> (g) the similarity in quality of the act done to the act authorized;
> (h) whether or not the instrumentality by which the harm is done has been furnished by the master to the servant;
> (I) the extent of departure from the normal method of accomplishing an authorized result; and
> (j) whether or not the act is seriously criminal.

5

Restatement (Second) of Agency § 229.

The question of whether an employee was acting within the scope of employment is generally a question of fact. *Tenn. Farmers*, 840 S.W.2d at 936-37; *Hughes*, 340 S.W.3d at 361 n.6 (citing *Tenn. Farmers*). However, the inquiry becomes a question of law "when the facts are undisputed and cannot support conflicting conclusions." *Tenn. Farmers*, 840 S.W.2d at 937.[2] "Thus, whether an employee is acting within the scope of his employment can be reviewed as a question of law when the employee's acts are clearly beyond the scope of his authority." *Tenn. Farmers*, 840 S.W.2d at 937 (citations omitted). Although this case is just at the motion to dismiss stage, the court believes that whether Steele was acting within the scope of his employment is a question of law that the court can decide.

The following paragraphs from the "Facts" section of the amended complaint are of considerable significance to the court's analysis of this issue:

---

[2] The *Hughes* Court also mentioned the recent revision to the Restatement of Agency in the Restatement (Third) of Agency, which states:

> An employee acts within the scope of employment when performing work assigned by the employer or engaging in a course of conduct subject to the employer's control. An employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer.

*Hughes*, 340 S.W.2d at 364-65 (citing Restatement (Third) of Agency § 7.07(2) (2006)). The Court, however, noted that while the newer version "provides a simplified approach to the 'scope of employment' question," the Restatement (Second) of Agency provides "a more instructive framework for an analysis that is ultimately 'dependent upon the facts of the particular case.'" *Id*. at 365.

6

12. Defendant David Steele did not intend to further any legitimate purpose of Defendant O'Reilly by reviewing the pictures and other information on Plaintiff's cell phone.

13. Indeed, Defendant David Steele took Plaintiff's cell phone from Plaintiff's shirt breast pocket to look for electronically stored digital pictures on the cell phone because Defendant David Steele believed the cell phone contained such pictures of Plaintiff in a state of undress which Defendant David Steele believed would be sexually stimulating to Defendant David Steele.

. . .

18. However, after taking Plaintiff's phone without her consent, and despite Plaintiff's numerous requests that Defendant David Steele return Plaintiff's cell phone, Defendant David Steele kept Plaintiff's cell phone and reviewed the pictures on the phone, including the pictures of Plaintiff in a swimsuit.

19. In addition, while Defendant David Steele was keeping Plaintiff's phone from Plaintiff without Plaintiff's consent, Defendant David Steele showed, without Plaintiff's consent and over Plaintiff's objection, the pictures of Plaintiff in swimsuit to a customer of the Store that was also a friend of Defendant David Steele.

Plaintiff relies primarily on her response related to the first motion to dismiss and argues liability issues related to her discrimination claims, which are not the subject of the motion before the court. Plaintiff also wants the court to consider the recent Supreme Court decision in *Staub v. Proctor Hospital*, 131 S. Ct. 1186 (2011). That case, however, is inapposite to the issues before the court, as plaintiff's employment discrimination claims are not the subject of the present motion.

*Staub* dealt with discrimination under the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), which is similar to Title VII in that it provides liability "if the person's membership . . . is a motivating factor in the employer's action." 38 U.S.C. § 4311; *Staub*, 131 S. Ct. at 1191 ("[USERRA] is very similar to Title VII."). The case involved the "cat's-paw theory." Under that theory, if an "employee demonstrates a co-worker with a retaliatory motive had influence over the ultimate decisionmakers, that co-worker's retaliatory motive may be imputed to the ultimate decisionmakers, thereby establishing a causal link between the protected activity and the adverse employment action." *Gollas v. Univ. of Tex. Health Sci. Ctr. at Houston*, 425 F. App'x 318, 325 (5th Cir. 2011). The issue in *Staub* was whether an employer could be held liable when the employee who was responsible for the termination had relied on a supervisor's evaluation motivated by animus. The Supreme Court held that "if a supervisor performs an act motivated by [illegal] animus that is intended by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable." *Staub*, 131 S. Ct. at 1194. This is not *respondeat superior* liability as asserted by plaintiff in the amended complaint whereby she is attempting to hold O'Reilly vicariously liable for the torts of its employee Steele. *Staub* is a discrimination case and does not apply to the nondiscrimination issues presently before the court.

After applying the factors from the Restatement (Second) of Agency to the facts as alleged in the complaint, which at this stage are assumed to be true, the court finds

8

that Steele's conduct was not within the scope of his employment with defendant O'Reilly. His actions regarding the plaintiff's cell phone are not the kind of conduct he was hired to perform as a manager of an auto parts retail store and certainly could not have been authorized by O'Reilly. Steele's actions were personal in nature and not in the furtherance of his employer's business. Plaintiff herself states in the complaint that Steele was not intending "to further any legitimate purpose" of defendant's when he reviewed the pictures on the cell phone. He viewed them because he thought they would be sexually stimulating. His conduct regarding the plaintiff's cell phone was outside the scope of his employment for the purposes of *respondeat superior* liability. Therefore, defendant cannot be held vicariously liable for the claims in which plaintiff seeks to hold defendant liable based upon that doctrine of liability, and those claims as to O'Reilly will be dismissed.[3]

---

[3] The court observes that if the claim under the Tennessee Personal Rights Protection Act ("TPRPA") and the claim for intentional infliction for emotional distress were not being dismissed as to O'Reilly based on the doctrine of *respondeat superior*, they would not be sustainable on the merits. The TPRPA does not apply to the circumstances in this case. "[T]he statute is narrowly drawn, so that it only prohibits the unauthorized use of another's name or likeness 'as an item of commerce for purposes of advertising products, merchandise, goods, or services, or for purposes of . . . solicitation of . . . purchases of products, merchandise, goods, or services.' Tenn. Code Ann. § 47-25-1105(a) (1988 & Supp. 1993). Indeed, its legislative history indicates that the statute was intended to 'create[] an inheritable property right for those people who use their name[s] or likeness[es] in a commercial manner, such as an entertainer or sports figure – someone who uses [his or her] name for endorsement purposes.'" *Apple Corps Ltd. v. A.D.P.R., Inc.*, 843 F. Supp. 342, 347-48 (M.D. Tenn. 1993). Plaintiff does not fit into any of these categories.

In addition, plaintiff's allegations concerning her intentional infliction of emotional distress/outrageous conduct cause of action fall short of the stringent requirements for stating such a sustainable claim.

Outrageous conduct and intentional infliction of emotional distress are the same cause of action. *Bain v. Wells*, 936 S.W.2d 618, 622 n.3 (Tenn. 1997). There are three elements to this cause of action under Tennessee law: "(1) the conduct complained of must be intentional or reckless; (2)
(continued...)

IV.

*Conclusion*

Therefore, for the reasons stated above, "Defendant O'Reilly's Partial Motion to Dismiss" will be granted. The following claims will be dismissed as to defendant O'Reilly: the Federal Stored Communications Act, 18 U.S.C. § 2701 *et seq*.; the Tennessee Personal and Commercial Computer Act of 2003, Tenn. Code Ann. § 39-14-601 *et seq*.; the Tennessee Personal Rights Protection Act of 1984, Tenn. Code Ann. § 47-25-1101 *et seq*.;

---

[3](...continued)
the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of must result in serious mental injury." *Id*. at 622 (citations omitted). In *Bain*, the Tennessee Supreme Court also noted that it has "adopted and applied the high threshold standard described in the Restatement (Second) of Torts" for determining when particular conduct is tortious. *Id*. at 622-23. The Court stated:

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous."

*Id*. at 623(citations omitted). Plaintiff's amended complaint does not contain facts that begin to rise to the level necessary to meet this standard, nor has she pled any "serious mental injury."

10

and the common law torts of conversion, invasion of privacy, and intentional infliction of emotional distress. An order consistent with this opinion will be entered.

ENTER:

<u>      s/ Leon Jordan       </u>
United States District Judge